BILL LOCKYER
Attorney General of the State of California
ROBERT R. ANDERSON
Chief Assistant Attorney General
MARY JO GRAVES
Senior Assistant Attorney General
CARLOS A. MARTINEZ
Supervising Deputy Attorney General
MATHEW CHAN
Deputy Attorney General
State Bar No. 109271
   1300 I Street, Suite 125
   P.O. Box 944255
   Sacramento, CA 94244-2550
   Telephone: (916) 324-5232
   Fax: (916) 324-2960
   Email: Matt.Chan@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERT RAMESES,**<br><br>       Petitioner,<br><br>  v.<br><br>**SCOTT KERNAN, Warden,**<br><br>       Respondent. | CIV S-04-1173 GEB GGH P |

**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

**TABLE OF CONTENTS**

| | Page |
|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES | 4 |
| STATEMENT OF THE CASE | 4 |
| STATEMENT OF FACTS | 6 |
| ARGUMENT | 7 |
| I. THIS CASE IS SUBJECT TO THE DEFERENTIAL STANDARD OF REVIEW UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT ("AEDPA") | 7 |
| II. THE STATE COURT'S DENIAL OF RAMESES' CLAIM THAT THE TRIAL COURT VIOLATED HIS FEDERAL CONSTITUTIONAL RIGHTS BY FORCING HIM TO WEAR A STUN BELT AT TRIAL (GROUND THREE) WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, UNITED STATES SUPREME COURT PRECEDENT; IN ANY EVENT, RAMESES FAILS TO SHOW THAT THE ASSERTED ERROR WAS PREJUDICIAL | 10 |
|     A. The State Court's Denial Of Rameses' Claim Was Not An Unreasonable Application Of United States Supreme Court Precedent, i.e., The Trial Court Did Not Abuse Its Discretion When Ordering Rameses To Wear A Stun Belt | 11 |
|     B. Any Error In Requiring Rameses To Wear A Stun Belt In Trial Was Harmless | 15 |
| III. THE STATE COURT'S DENIAL OF RAMESES' *APPRENDI* CLAIM (GROUND ONE) WAS NOT AN UNREASONABLE APPLICATION OF UNITED STATES SUPREME COURT PRECEDENT | 20 |
|     A. Factual Background | 20 |
|     B. Analysis | 21 |
| IV. THE STATE COURT'S DENIAL OF RAMESES' CLAIM OF A FIFTH AMENDMENT VIOLATION BASED ON THE PROSECUTION'S USE OF IMMUNIZED TESTIMONY (GROUND TWO) WAS NOT AN UNREASONABLE APPLICATION OF UNITED STATES SUPREME COURT PRECEDENT | 26 |
|     A. Factual Background | 26 |
|     B. Analysis | 28 |
| CONCLUSION | 32 |

# TABLE OF AUTHORITIES

Page

**Cases**

| | |
|---|---|
| *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) | 21 |
| *Apprendi v. New Jersey*, 530 U.S. 466 (2000) | 20, 21 |
| *Bailey v. Newland*, 263 F.3d 1022 (9th Cir. 2001) | 10, 20 |
| *Boyd v. Newland*, 393 F.3d 1008 (9th Cir. 2004) | 13 |
| *Brecht v. Abrahamson*, 507 U.S. 619 (1993) | 9, 16 |
| *Brown v. Payton*, 544 U.S. ___, 125 S. Ct. 1432 (2005) | 7, 8 |
| *Caliendo v. Warden*, 365 F.3d 691 (9th Cir. 2004) | 31 |
| *Campbell v. Rice*, 408 F.3d 1166 (9th Cir. 2005) | 8 |
| *Caspari v. Bohlen*, 510 U.S. 383 (1994) | 22 |
| *Castillo v. Stainer*, 983 F.2d 145 (9th Cir. 1992) | 16 |
| *Cooper-Smith v. Palmateer*, 397 F.3d 1236 (9th Cir. 2005) | 16 |
| *Deck v. Missouri*, — U.S. —, 125 S.Ct. 2007 (2005) | 13, 14 |
| *Delgado v. Lewis*, 223 F.3d 976 (9th Cir. 2000) | 10, 20 |
| *Diaz v. Secretary for the Department of Corrections* 402 F.3d 1136 (11th Cir. 2005) | 13, 15 |
| *Dillard v. Roe*, 244 F.3d 758 (9th Cir. 2001) | 22 |
| *Duckett v. Godinez*, 67 F.3d 734 (9th Cir. 1995) | 14, 15 |
| *Duncan v. Henry*, 513 U.S. 364 (1995) | 29 |
| *Early v. Packer*, 537 U.S. 3 (2002) | 7, 9 |
| *Fisher v. Roe*, 263 F.3d 906 (9th Cir. 2001) | 10, 20 |
| *Gallego v. McDaniel*, 124 F.3d 1065 (9th Cir. 1997) | 19 |
| *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198 (9th Cir. 2005) | 29 |
| *Gonzalez v. Pliler*, 341 F.3d 897 (9th Cir. 2003) | 13, 15 |
| *Greenawalt v. Ricketts*, 943 F.2d 1020 (9th Cir. 1991) | 22 |
| *Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) | 23 |

## TABLE OF AUTHORITIES (continued)

| | Page |
|---|---:|
| *Himes v. Thompson*, 336 F.3d 848 (9th Cir. 2003) | 10, 20 |
| *Holland v. Jackson,* 542 U.S. 649 (2004) | 16 |
| *Illinois v. Allen*, 397 U.S. 337 (1970) | 11 |
| *James v. Borg*, 24 F.3d 20 (9th Cir. 1994) | 19 |
| *Johnson v. Zenon*, 88 F.3d 828 (9th Cir. 1996) | 29 |
| *Juan H. v. Allen*, 408 F.3d 1262 (9th Cir. 2005) | 8, 9, 12, 25, 31 |
| *Kastigar v. United States*, 406 U.S. 441 (1972) | 28 |
| *Keating v. Hood*, 133 F.3d 1240 (9th Cir. 1998) | 29 |
| *Lindh v. Murphy*, 521 U.S. 320 (1997) | 7 |
| *Lockhardt v. Johnson*, 104 F.3d 54 (5th Cir. 1997) | 12 |
| *Lockyer v. Andrade*, 538 U.S. 63 (2003) | 8 |
| *Luna v. Cambra*, 306 F.3d 954 (9th Cir. 2002) | 10, 20 |
| *Lyons v. Crawford*, 232 F.3d 666 (9th Cir. 2000) | 29 |
| *Medina v. Hornung*, 386 F.3d 872 (9th Cir. 2004) | 9 |
| *Middleton v. McNeil*, 541 U.S. 433, 124 S. Ct. 1830 (2004) | 8 |
| *Morgan v. Bunnell,* 24 F.3d 49 (9th Cir.1994) | 12 |
| *O'Neal v. McAninch*, 513 U.S. 432 (1995) | 9 |
| *Penry v. Lynaugh*, 492 U.S. 302 (1989) | 22 |
| *People v. Abarca*, 233 Cal.App.3d 1347 (1991) | 25 |
| *People v. Garcia*, 56 Cal.App.4th 1349 (1997) | 12 |
| *People v. Greenberger*, 58 Cal.App.4th 298 (1997) | 16 |
| *People v. Johnson*, 233 Cal.App.3d 425 (1991) | 16 |
| *People v. Mar*, 28 Cal.4th 1201 (2002) | 12 |
| *People v. Superior Court (Romero)* 13 Cal.4th 497 (1996) | 4 |
| *People v. Watson*, 46 Cal.2d 818 (1956) | 12 |
| *Sawyer v. Smith*, 497 U.S. 227 (1990) | 8 |

Answer to Petition for Writ of Habeas Corpus

iii

**TABLE OF AUTHORITIES (continued)**

| | Page |
|---|---|
| *Shepard v. United States* — U.S. —, 125 S.Ct. 1254 (2005) | 23 |
| *Shumway v. Payne*, 223 F.3d 982 (9th Cir. 2000) | 29 |
| *Slack v. McDaniel*, 529 U.S. 473 (2000) | 29 |
| *Stringer v. Black*, 503 U.S. 222 (1992) | 8 |
| *Teague v. Lane*, 489 U.S. 288 (1989) | 8, 22 |
| *Torres v. Prunty*, 223 F.3d 1103 (9th Cir. 2000) | 9 |
| *United States v. Burge*, 407 F.3d 1183 (11th Cir. 2005) | 24 |
| *United States v. Byrd*, 765 F.2d 1524 (11th Cir. 1985) | 28, 30 |
| *United States v. Collins*, 109 F.3d 1413 (9th Cir. 1997) | 12 |
| *United States v. Creek*, 415 F.3d 349 (4th Cir 2005) | 22 |
| *United States v. Crowson*, 828 F.2d 1427 (1987) | 28, 30 |
| *United States v. Daniels*, 281 F.3d 168 (2002) | 30 |
| *United States v. Durham*, 287 F.3d 1297 (11th Cir. 2002) | 13 |
| *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004) | 12 |
| *United States v. Gonzalez-Ruiz*, 369 F. Supp.2d 1151 (N.D. Cal. 2005) | 22 |
| *United States v. Hampton*, 775 F.3d 1479 (11th Cir. 1985) | 31 |
| *United States v. Ivery*, 427 F.3d 69 (1st Cir. 2005) | 22, 23 |
| *United States v. Marcussen*, 403 F.3d 982 (8th Cir. 2005) | 24 |
| *United States v. Mariani*, 851 F.3d 595 (2d Cir. 1988) | 29, 30 |
| *United States v. McDaniel*, 482 F.2d 305 (8th Cir. 1973) | 29 |
| *United States v. McGuire*, 45 F.3d 1177 (8th Cir. 1995) | 30 |
| *United States v. Montoya*, 45 F.3d 1286 (9th Cir. 1995) | 28-31 |
| *United States v. Rinaldi*, 808 F.3d 1579 (D.C. Cir. 1987) | 31 |
| *United States v. Sanchez-Cervantes*, 282 F.3d 664 (9th Cir. 2002) | 23 |
| *United States v. Serrano*, 870 F.2d 1 (1st Cir. 1989) | 29, 30 |
| *United States v. Thompson*, 421 F.3d 278 (4th Cir. 2005) | 23, 24 |

Answer to Petition for Writ of Habeas Corpus

iv

## TABLE OF AUTHORITIES (continued)

| | Page |
|---|---|
| *United States v. Velasco*, 953 F.2d 1467 (7th Cir. 1992) | 28, 30 |
| *Villafuerte v. Stewart*, 111 F.3d 616 (9th Cir. 1997) | 20 |
| *Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999) | 7 |
| *Wiggins v. Smith*, 539 U.S. 510 (2003) | 9, 32 |
| *Williams v. Taylor*, 529 U.S. 362 (2000) | 7, 8 |
| *Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2004) | 17 |
| *Wixom v. Washington*, 264 F.3d 894 (9th Cir. 2001) | 22 |
| *Woodford v. Visciotti*, 537 U.S. 19 (2002) | 8 |
| *Ylst v. Nunnemaker*, 501 U.S. 797 (1991) | 9 |

**Statutes**

| | |
|---|---|
| 28 U.S.C. § 2254(d) | 7 |
| 28 U.S.C. § 2254(d)(1) | 7 |
| 28 U.S.C. § 2254(d)(2) | 9 |
| 28 U.S.C. § 2254(e)(1) | 9, 25, 32 |
| Alabama Code § 13A-7-5(a) | 24 |
| California Penal Code § 17(b) | 4 |
| California Penal Code § 476a(a) | 4 |
| California Penal Code § 667(b) - (i) | 4 |

BILL LOCKYER
Attorney General of the State of California
ROBERT R. ANDERSON
Chief Assistant Attorney General
MARY JO GRAVES
Senior Assistant Attorney General
CARLOS A. MARTINEZ
Supervising Deputy Attorney General
MATHEW CHAN
Deputy Attorney General
State Bar No. 109271
   1300 I Street, Suite 125
   P.O. Box 944255
   Sacramento, CA 94244-2550
   Telephone: (916) 324-5232
   Fax: (916) 324-2960
   Email: Matt.Chan@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERT RAMESES,**<br><br>               Petitioner,<br><br>v.<br><br>**SCOTT KERNAN, Warden,**<br><br>               Respondent. | CIV S-04-1173 GEB GGH P<br><br>**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |

     Pursuant to the order of this Court, Respondent, Scott Kernan, Warden at the Mule Creek State Prison in Ione, California, answers the Amended Federal Petition for Writ of Habeas Corpus as follows:

I.

     Petitioner, Robert Rameses, is lawfully confined by Respondent pursuant to a valid judgment of the Superior Court of the State of California, County of El Dorado, case number P99CRF0145, imposed on January 12, 2001.

II.

     Rameses, who had four prior serious felony convictions, was convicted on a felony charge of issuing checks without sufficient funds. He was sentenced under California's Three Strikes law

1. to an indeterminate term of 25 years to life in prison.

### III.

Rameses' judgment was affirmed on direct appeal.

### IV.

Rameses filed a Petition for Review with the California Supreme Court, which was denied. He subsequently filed a Petition for Writ of Habeas Corpus with that court, which was also denied.

### V.

It appears Rameses has exhausted all of his claims for relief.[1] *But see* Memorandum of Points and Authorities n.24.

### VI.

Respondent affirmatively alleges that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to this case.

### VII.

The state court's denial of ground one (i.e., Rameses' claim that his federal constitutional rights were denied because his sentence was increased beyond the statutory maximum based on a finding neither made by the jury nor proven beyond a reasonable doubt) was not contrary to, or an unreasonable application of, United States Supreme Court precedent.

### VIII.

The state court's denial of ground two (i.e., Rameses' claim that the prosecution's use of immunized information violates the scope of immunity required to protect the Fifth Amendment privilege against self-incrimination) was not contrary to, or an unreasonable application of, United States Supreme Court precedent.

### IX.

The state court's denial of ground three (i.e., Rameses' claim that the trial court violated his federal constitutional rights by forcing him to wear a stun belt at trial) was not contrary to, or an

---

1. To the extent that any claims are not exhausted for any reason, Respondent does not waive the exhaustion requirement.

Answer to Petition for Writ of Habeas Corpus

2


unreasonable application of, United States Supreme Court precedent; in any event, Rameses fails to show that the asserted error was prejudicial.

X.

Respondent denies that Petitioner is entitled to relief on any claim.

XI.

Respondent will lodge with this Court, contemporaneously with the filing of Respondent's answer, the state court record in this case, which will include the trial transcripts, the briefing on direct appeal, the appellate opinion, Rameses' state habeas petitions and the court orders denying those petitions.

Dated: January 26, 2006

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

ROBERT R. ANDERSON
Chief Assistant Attorney General

MARY JO GRAVES
Senior Assistant Attorney General

CARLOS A. MARTINEZ
Supervising Deputy Attorney General


 /s/  Mathew Chan
MATHEW CHAN
Deputy Attorney General

Attorneys for Respondents

Answer to Petition for Writ of Habeas Corpus

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF THE CASE

A grand jury indictment was filed on April 12, 1999, in El Dorado County Superior Court, number P99CRF0145, charging Robert Rameses with a single felony count of issuing checks without sufficient funds[2] in violation of California Penal Code section 476a(a).[3] Lodged Item 17 (I CT) 5-6.[4] The indictment also alleged that Rameses had prior convictions for a serious or violent felony pursuant to Penal Code section 667(b) through (i) (i.e., under California's Three Strikes law) in that Rameses had four prior convictions for second degree murder in Florida in 1988. I CT 6-7.

On July 6, 2000, a jury found Rameses guilty as charged and additionally found that the amounts written on the bad checks exceeded $200. CT 504, 566-67; Lodged Item 29 (IX RT) 3435-36.[5] When jury trial proceeded as to the prior convictions, the prosecution provided documentary evidence of Rameses' four prior Florida convictions for second degree murder, and the defense submitted the matter. II CT 504, 508; IX RT 3439-44. The jury then found true the prior conviction allegations. II CT 505, 568-69; IX RT 3448-49.

On January 12, 2001, the court denied Rameses' motion to reduce his conviction to a misdemeanor pursuant to Penal Code section 17(b) and likewise denied Rameses' motion to strike prior convictions pursuant to *People v. Superior Court (Romero)* 13 Cal.4th 497 (1996). III CT 659, 697-705; IX RT 3548-56. The court sentenced Rameses to an indeterminate term of 25 years to life in prison for his conviction under Penal Code section 467a under the Three Strikes law. III CT 659,

---

2. The parties subsequently stipulated that it was alleged that between August 11, 1998, and January 28, 1999, Rameses, with the intent to defraud, passed twenty-seven (27) checks, totaling $2,397.42, on a closed checking account at various businesses in El Dorado County. II CT 477; *see* Lodged Item 30 at 44.

3. Unless otherwise indicated, all section references are to the California Statutes.

4. The Clerk's Transcripts lodged with this Court as "Lodged Item 17" through "Lodged Item 19" will be referred to as "I CT" through "III CT,"respectively.

5. The Reporter's Transcripts lodged with this Court as "Lodged Item 21" through "Lodged Item 29" will be referred to as "I RT" through "IX RT," respectively.

1  661, 708; IX RT 3559.

2  That same day, Rameses filed his notice of appeal. III RT 663. In his direct appeal of his judgment to the California Court of Appeal (No. C037486), Rameses argued that to the extent that his immunized testimony contributed to the decision to pursue the case as a Three-Strikes case, such prosecution was barred by the Fifth Amendment; that the evidence was insufficient to establish that his prior Florida convictions constitute strikes; and that if such evidence was sufficient, then defense counsel was ineffective for not objecting to hearsay evidence. Lodged Item 1.

3  On March 10, 2003, while his direct appeal was pending before the California Court of Appeal, Rameses filed a Petition for Writ of Habeas Corpus with that Court (No. C043468) that alleged ineffective assistance of appellate counsel. Lodged Item 12.

4  On May 8, 2003, the state appellate court filed an unpublished decision affirming the judgment on appeal in full. Lodged Item 7. On June 3, 2003, the state appellate court denied Rameses' Petition for Rehearing. Lodged Items 8 & 9. The court subsequently denied Rameses' habeas petition. Lodged Item 13.

5  On June 16, 2003, Rameses filed a Petition for Review with the California Supreme Court (No. S116755). Lodged Item 10. The California Supreme Court denied that petition on July 30, 2003. Lodged Item 11.

6  On August 26, 2004, Rameses filed a pro se Petition for Writ of Habeas Corpus in this Court, which contained the sole claim that Rameses' rights under the Fifth and Fourteenth Amendments were violated when the prosecution made "derivative use" of Rameses' convictions that were protected by the Fifth Amendment's privilege against self-incrimination. On September 24, 2004, Rameses filed a Petition for Writ of Habeas Corpus with the California Supreme Court (No. S128005), which raised various grounds, including claims that the Fifth Amendment prohibited the prosecution's use of Rameses' compelled immunized testimony from an earlier criminal proceeding and that the trial court violated Rameses' due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution when it denied him a fair trial by forcing him to wear a stun-belt during his court proceedings. Lodged Item 14.

7  On October 4, 2004, this Court appointed counsel to represent Rameses and issued an

Answer to Petition for Writ of Habeas Corpus

5

order directing the parties to file a joint scheduling statement. On July 6, 2005, the parties filed a joint scheduling statement, informing this Court that they disagreed as to whether the initial pro se petition contained a fully exhausted claim. Rameses represented that he would file an amended federal petition incorporating some or all of the claims in the pending state petition as well as claims that he will raise in a supplemental petition to the California Supreme Court. The parties agreed that the federal proceedings may be held in abeyance if this Court determined there was good cause.

By an order filed on August 12, 2005, this Court directed Respondent to file within thirty (30) days a motion to dismiss or file an explicit waiver of any challenge to the petition on grounds of nonexhaustion. Unbeknown at that time was the fact that the California Supreme Court received Rameses' supplement to his state habeas corpus petition on August 8, 2005 (Lodged Item 15) and denied his petition on August 10, 2005 (Lodged Item 16). In his supplemental petition, Rameses raised the claim that he was denied his constitutional rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because his sentence was increased beyond the statutory maximum based on a finding neither made by the jury nor proven beyond a reasonable doubt. Upon learning of the denial of Rameses' state habeas petition, Respondent filed a response informing this Court that the sole claim in Rameses' original petition had now been exhausted and asking the Court for direction as to how to proceed. In a subsequent order, this Court determined that Respondent's response discharged the Court's order of August 12, 2005.

On September 7, 2005, Rameses filed the present Amended Petition for Writ of Habeas Corpus along with a request for an extension of time in which to file points and authorities. On November 21, 2005, following the grant of two extensions of time, Rameses filed a memorandum of points and authorities in support of his first amended petition for writ of habeas corpus.

On November 29, 2005, this Court directed Respondent to file an answer or a dispositive motion.

**STATEMENT OF FACTS**

The detailed facts of Rameses' underlying conviction for passing bad checks in violation of Penal Code section 476a(a) are not pertinent to the issues raised herein. Rameses does not

Answer to Petition for Writ of Habeas Corpus

challenge the sufficiency of the evidence supporting that conviction.[6] As succinctly stated by the state appellate court, "The People proved defendant knowingly wrote over two dozen bad checks at 12 local businesses."[7] Lodged Item 7 at 2.

## ARGUMENT

### I.

**THIS CASE IS SUBJECT TO THE DEFERENTIAL STANDARD OF REVIEW UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT ("AEDPA")**

The petition for writ of habeas corpus in this case was filed on August 26, 2004, well after the effective date of AEDPA, and is thus governed by AEDPA's standard of review under 28 U.S.C. § 2254(d). *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999). *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., concurring).

Section 2254(d)(1) of title 28 defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

The United States Supreme Court recently stated:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.

*Brown v. Payton*, 544 U.S. ___, 125 S. Ct. 1432, 1438 (2005). A state court is not required to cite a formulary statement of the controlling test. It suffices that the "fair import" of the state court's decision is that it applied the controlling Supreme Court standard. *Early v. Packer*, 537 U.S. 3, 9

---

6. Rameses' defense at trial was that the evidence did not show that he harbored the intent to defraud. RT 3391-3402.

7. Rameses' had provided a summary of facts to the appellate court in his opening brief. AOB at 2-8.

1  (2002). Likewise, a state court adjudication is not "contrary to" merely because it does not cite Supreme Court authority. Indeed, "it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

As for the "unreasonable application" clause, the United States Supreme Court has held:

> A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown*, 544 U.S. ___, 125 S. Ct. at 1439. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. at 410; *Middleton v. McNeil*, 541 U.S. 433, 124 S. Ct. 1830, 1832 (2004) (it must be shown that state court's application of governing federal law is "objectively unreasonable"); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005), citing *Lockyer v. Andrade*, 538 U.S. 63, 74 (2003). In conducting habeas review, it is presumed that the state courts know and follow the law. *Juan H.*, at 1270, citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in § 2254(d)(1) refers to holdings, as opposed to dicta, of Supreme Court decisions as of the time of the relevant state-court decision. *Williams*, 529 U.S. at 412.[8/] Other than § 2254(d)(1)'s restriction on the source of clearly established law to Supreme Court jurisprudence, "whatever would qualify as an old rule under [ ] *Teague*[9/] jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under § 2254(d)(1)." *Id.* Thus, the law is "clearly established" if Supreme Court precedent existing at the time the state court adjudicated the claim was specific enough to dictate a certain result. *Sawyer v. Smith*, 497 U.S. 227, 233-34 (1990); *Stringer v. Black*, 503 U.S. 222, 231 (1992).

In addition to the standard announced in § 2254(d)(1), AEDPA also provides a petitioner

---

8. "Only Supreme Court precedents are biding on state courts under AEDPA, but [Ninth Circuit] precedents may be pertinent to the extent that they illuminate the meaning and application of Supreme Court precedents." *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005).

9. *Teague v. Lane*, 489 U.S. 288 (1989).

Answer to Petition for Writ of Habeas Corpus

may be granted relief if the state court's decision was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts in light of the evidence" standard under § 2254(d)(2) is equivalent to the "unreasonable application" clause of § 2254(d)(1). *Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000). In inquiring if there has been an unreasonable determination of the facts, the federal court "must presume that any state court factual findings are correct and the petitioner has the burden of proving otherwise by clear and convincing evidence." *Juan H.* 408 F.3d at 1270 (citing 28 U.S.C. § 2254(e)(1) and *Wiggins v. Smith*, 539 U.S. 510, 528 (2003)).

The Ninth Circuit has recognized that "even if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, habeas relief may still be denied absent a showing of prejudice." *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004) (citing *Early*, 537 U.S. at 10-11). "The overwhelming majority of trial errors are non-structural and do not trigger habeas relief unless the error resulted in 'substantial and injurious effect or influence in determining the jury's verdict[,]' . . . or unless the judge 'is in grave doubt' about the harmlessness of the error." *Medina*, 386 F.3d at 877 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) and *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had a substantial and injurious effect or influence on the jury's verdict, that error is not harmless. And, the petitioner must win." *O'Neal*, 513 U.S. at 436.

Here, the state appellate court addressed Rameses' claim that the prosecution violated his Fifth Amendment privilege against self-incrimination by the use of his immunized testimony from a prior criminal proceeding (Amended Pet. Ground Two). All the claims presented in the amended petition were denied by the California Supreme Court without comment.[10] A state court's silent denial may constitute an adjudication on the merits, entitled to deference under the AEDPA. When

---

10. Under *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), it is presumed that by issuance of a silent denial, the California Supreme Court did not intend to change the last-reasoned decision rejecting a claim. Thus, this Court should look to the state appellate court decision in reviewing Ground Two.

Answer to Petition for Writ of Habeas Corpus

confronted with a state court decision that does not furnish a basis for its reasoning on a constitutional issue, the Ninth Circuit will independently review the record in adjudication of the issue. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). The Ninth Circuit has stated, "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *see also Luna v. Cambra*, 306 F.3d 954, 960 (9th Cir. 2002), *amended* 311 F.3d 928 (9th Cir. 2002); *Bailey v. Newland*, 263 F.3d 1022, 1028, 1033 (9th Cir. 2001); *Fisher v. Roe*, 263 F.3d 906, 914, 917 (9th Cir. 2001); *Delgado*, 233 F.3d at 982.

## II.

**THE STATE COURT'S DENIAL OF RAMESES' CLAIM THAT THE TRIAL COURT VIOLATED HIS FEDERAL CONSTITUTIONAL RIGHTS BY FORCING HIM TO WEAR A STUN BELT AT TRIAL (GROUND THREE) WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, UNITED STATES SUPREME COURT PRECEDENT; IN ANY EVENT, RAMESES FAILS TO SHOW THAT THE ASSERTED ERROR WAS PREJUDICIAL[11]**

Rameses asserts that the trial court violated his rights under the Fifth, Sixth and Fourteenth Amendments by forcing him to wear a stun belt in the absence of any compelling reasons and consideration of less restrictive alternatives. He contends that he was prejudiced by having to wear the stun belt because it rendered him unable to participate fully in his defense, communicate sufficiently with his attorney or concentrate adequately on the witnesses' testimony. P&As at 3-10. The California Supreme Court rejected this claim in a silent denial. Lodged Items 14 and 16. Accordingly, this Court must conduct an independent review to determine if that decision was "objectively reasonable." *Hines v. Thompson*, 336 F.3d at 853; *see also Luna v. Cambra*, 306 F.3d at 960, *amended* 311 F.3d 928; *Bailey v. Newland*, 263 F.3d at 1028, 1033; *Fisher v. Roe*, 263 F.3d at 914, 917; *Delgado*, 233 F.3d at 982.

---

11. Respondent will respond to Rameses' claims in the order presented in his separately filed Memorandum of Points and Authortiies ("P&As").

Answer to Petition for Writ of Habeas Corpus

A. **The State Court's Denial Of Rameses' Claim Was Not An Unreasonable Application Of United States Supreme Court Precedent, i.e., The Trial Court Did Not Abuse Its Discretion When Ordering Rameses To Wear A Stun Belt**

With respect to the court's order that Rameses be required to wear a stun belt, the following discussion took place on the first day of trial:

> THE COURT: I just wanted to make sure – I know I authorized they put that strap on your stomach, Mr. Rameses, to make sure if there are any outbursts or any unnecessary acting out – you've been a gentleman thus far throughout our proceedings, but I know we're coming down, now, to facing the trial. There's serious consequences, as you know, for the outcome of this case. You're a very large man. You've shown a tendency in the past to commit extreme acts of violence, you know, and the murder convictions that you suffered back in Florida. So for all those reasons, and to make sure we have an orderly proceeding, I authorized that that belt be place on you.
>
> My one concern was that it not show to the jury because I don't want to prejudice you in the eyes of the jury. Does your suit coat button so that the whole thing is covered up? Could you stand so I could see whether it shows at all.
>
> THE DEFENDANT: It's not going to button comfortably with that.
>
> THE COURT: Oh, I see. I don't think that it will show anything to the jury.
>
> One thing we'll have you do is to stand up and introduce yourself to the jury because we want them to say whether they identify you, you know, recognize you or anything like that. So, that would be the only time that you'd be exposed to the jury.
> And we're certainly not going to make an issue out of that restraint that's put on you. But I think for this case, I think that's appropriate here.

VIII RT 2986-87.

Just before the jury panel entered the courtroom, the judge again warned Rameses to "be sure and hold your coat together when you stand up and introduce yourself to the jurors; okay?" VIII RT 2996. Rameses does not assert that the stun belt was seen by any of the jurors. State Habeas at 24-29, P&As at 5 n.3. In an earlier proceeding, the trial judge noted that for bail purposes, the court had been made aware that Rameses posed a significant flight risk. VI RT 1500.

In *Illinois v. Allen*, 397 U.S. 337 (1970), the Supreme Court observed that "no person should be tried while shackled and gagged except as a last resort." *Id*. at 344. The Court noted that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, that such practice is itself an affront to the dignity and decorum of judicial proceedings and that a defendant's ability to communicate with his counsel is greatly reduced under a condition of total physical restraint. *Id.*

Answer to Petition for Writ of Habeas Corpus

11

1   It has long been recognized that a court's decision to shackle a defendant is reviewed for an abuse of discretion. *United States v. Fernandez*, 388 F.3d 1199, 1245 (9th Cir. 2004) (citing *Morgan v. Bunnell,* 24 F.3d 49, 50 (9th Cir.1994) (per curiam)); *United States v. Collins*, 109 F.3d 1413, 1417 (9th Cir. 1997); *see also Lockhardt v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997) ("The decision to restrain an obstreperous defendant with visible restraints lies within the sound discretion of the trial court.") (citing to *Allen,* 397 U.S. at 343-44).

> Ninth Circuit law places restrictions on that discretion, however: (1) "the court must be persuaded by compelling circumstances that some measure was needed to maintain the security of the courtroom"; and (2) "the court must pursue less restrictive alternatives before imposing physical restraints." *Jones v. Meyer,* 899 F.2d 883, 885 (9th Cir.1990) (internal quotation marks omitted).

*Fernandez*, 388 F.3d at 1245.

At the time the trial court ordered Rameses to wear a stun belt in June 2000, *People v. Garcia*, 56 Cal.App.4th 1349 (1997), held that the principles governing the use of visible physical restraints did not apply to the use of stun belts and that a court could order the use of a stun belt under a less demanding "good cause" standard. *See People v. Mar*, 28 Cal.4th 1201, 1218-19 (2002), overruling *Garcia*. *Garcia* and other cases had also suggested that "as a general matter, a stun belt should be viewed as a less restrictive and presumptively less prejudicial security tool than traditional shackles or chains . . . ." *Mar*, at 1226.[12] As noted by the California Supreme Court, "[t]he type of stun belt which is used while a prisoner is in the courtroom consists of a four-inch-wide elastic band,

---

12. In *Mar*, the California Supreme Court ruled that a trial judge's exercise of discretion to impose restraints must be analyzed "on a case-by-case basis." 28 Cal.4th at 1218. In that case, "[n]either the bailiff nor jail officials presented any explanation or evidence on the record to support their apparently unilateral decision to require that defendant wear the stun belt on the second day of his testimony." *Id.* at 1222. That Court found that because the record does not establish that the trial court's decision to use the stun belt was based on its determination of a manifest need for that restraint for security purposes, the trial court abused its discretion in rejecting the defendant's objection to the use of a stun belt. *Id.* at 1223. Under the particular circumstances of that case, including "the relative closeness of the evidence," the California Supreme Court found that the error was prejudicial, even under the "reasonable probability" standard per *People v. Watson*, 46 Cal.2d 818 (1956). *Id.* at 1223-25.

Answer to Petition for Writ of Habeas Corpus

12

1  which is worn *underneath* the prisoner's clothing.[13/] *Id.* at 1214 (emphasis added).

2  Given the case law that existed at the time the trial court ordered the use of a stun belt, it is not surprising that the trial court did not make any statements about less restrictive alternatives. A discussion about less restrictive alternatives is hardly necessary when the court imposes what is presumptively the least restrictive and least prejudicial measure of restraint. Thus, the absence of discussion of less restrictive alternatives does not mean it was not considered.

Since then, the Ninth Circuit has equated the use of stun belts to the use of visible physical restraints. *Gonzalez v. Pliler*, 341 F.3d 897, 899-901 (9th Cir. 2003)[14/] (citing *United States v. Durham*, 287 F.3d 1297, 1306 (11th Cir. 2002) [decision to use stun belt must be subject to at least the same close judicial scrutiny as required for use of other restraints] ). In *Gonzalez*, the Ninth Circuit ruled that the trial court erred in ordering the use of a stun belt, in part, because the decision to use the stun belt was made by the bailiff rather than by the court. *Id.* at 902. Finding error, the Ninth Circuit ruled that the petitioner should be given the opportunity to demonstrate prejudice at an evidentiary hearing. *Id.* at 903-04.

In *Diaz v. Secretary for the Department of Corrections*, 402 F.3d 1136 (11th Cir. 2005), the Eleventh Circuit observed that Florida courts were not required to follow *Durham* (the case relied upon in *Gonzalez*), which does not constitute clearly established federal law–i.e., United States Supreme Court precedent. *Id.* at 1146. Likewise, *Gonzalez* is also not clearly established federal law. *Cf. Boyd v. Newland*, 393 F.3d 1008, 1017 (9th Cir. 2004) (Ninth Circuit opinion in *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001) does not constitute clearly established federal law "as determined by the Supreme Court of the United States"). The United States Supreme Court has not yet spoken on the issue of requiring a defendant to wear a stun belt underneath his clothing.

The United States Supreme Court again addressed the issue of putting a defendant in *visible* restraints in *Deck v. Missouri*, — U.S. —, 125 S.Ct. 2007 (2005). The Court stated that, "the

---

13. Rameses had worn the stun belt underneath his clothes. *See* Declaration of Dean Irwin (Attachment 1)); Declaration of Michael Koring (Attachment 2).

14. The Ninth Circuit has ruled that restrictions to the use of stun belts does not constitute a "new rule" under *Teague*. *Gonzalez*, 341 F.3d at 904-05.

Answer to Petition for Writ of Habeas Corpus

13

Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck*, 125 S.Ct. at 2012. The high court explained that:

> [C]ourts cannot routinely place defendants in shackles or other physical restraints visible to the jury . . . . The constitutional requirement, however, is not absolute. It permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling.

*Id.* at 2014-15. The Supreme Court recognized the need to restrain dangerous defendants to prevent courtroom attacks and the need to give trial courts latitude in making individualized security determinations. *Id.* at 2014.

Here, the trial court noted that Rameses had "a tendency in the past to commit extreme acts of violence" and referred to the Florida murder convictions (as discussed further *infra*, Rameses personally used a gun, knife or sword in those murders). VIII RT 2986; *see* I CT 104-119. From a pretrial proceeding, the trial judge heard testimony reflecting that Rameses "had pled guilty to four murders, had admitted three others, that he was an enforcer for 'donations' to the Yahweh Ben Yahweh cult, and that his strong-arm tactics included firebombing." P&As at 21; *see* V RT 1070, 1149-54. Thus, Rameses' history of violent criminal behavior had already been established. *Duckett v. Godinez*, 67 F.3d 734, 749 (9th Cir. 1995) (recognizing that a defendant's status as a convicted felon may justify a trial judge's concern for safety). While such a fact alone may not be grounds for use of physical restraints (*id.*), the trial court noted two other factors. Rameses is a "very large man," which would make him difficult to subdue in case he became violent in the court room. Also, Rameses recognized that the outcome of the case could have serious consequences–i.e., Rameses knew he could be sentenced to a 25-year-to-life term for his third-strike conviction. While the court observed that Rameses had been a gentleman up to the first day of trial, the judge also indicated his awareness that Rameses' frame of mind may have changed since being in court on preliminary proceedings, because "we're coming down, now, to facing the trial." VIII RT 2986. It is one thing for a defendant to be calm during pretrial proceedings in which the defendant may be seeking to dismiss the case (e.g. I CT 41-48) or for an appointment of an attorney of his own choosing (see II CT 409, 450-51, 461, 468), and an entirely different matter when the defendant is actually in trial